UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MARIE G. CHERY,

                              Plaintiff,

                                                      **MEMORANDUM & ORDER**

                   -against-

                                                      06 CV 2903 (RJD) (LB)

THE CITY UNIVERSITY OF NEW YORK and
QUEENSBOROUGH COMMUNITY COLLEGE,

                              Defendants.
------------------------------------------------------------X
DEARIE, Chief Judge.

       Plaintiff *pro se*, who is a black woman of Haitian origin, alleges race and national origin discrimination by the City University of New York ("CUNY") and Queensborough Community College ("QCC") in violation of Title VII of the Civil Rights of Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"). QCC is a constituent college of CUNY. Plaintiff claims that defendants' failure to hire her on two occasions as an adjunct lecturer in the Foreign Languages and Literatures Department at QCC constituted unlawful discrimination. Defendants move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court grants defendants' motion.

## BACKGROUND

       Upon the unexpected resignation of an adjunct French language professor in the fall of 2005, QCC's Foreign Languages and Literatures Department ("department") immediately sought a replacement. Id. at ¶¶ 3-4. The hiring process was spearheaded by Ann-Marie Bourbon, Chairperson of the department, whose job it was to interview and recommend candidates to the

Departmental Personnel and Budget Committee ("DPBC"). Bourbon Decl. ¶ 8. The department kept a running file of applications from adjunct professor candidates. Id. at ¶ 5. In the fall of 2005, that file contained applications from nine individuals, including plaintiff, who "appeared to be capable of teaching French." Def.'s Rule 56.1 Stat't ¶ 8.

Bourbon contacted plaintiff on Saturday, September 24, 2005, and asked her to come in for an interview the following Monday. Pl.'s Aff. Opp'n Mot. Summ. J. ¶ 5. Bourbon also contacted another applicant, Amalia Rechtman, who had recently applied and interviewed for, but not been offered, a full-time position in the department.[1] Bourbon Decl. ¶¶ 9, 11. After interviewing plaintiff, Bourbon recommended Rechtman to the DPBC, which offered her the job. Rechtman taught French I at QCC for two weeks, after which she quit as a result of "discipline problems with the students." Id. at ¶ 21.

After Rechtman's departure, the department went back to the drawing board. Bourbon interviewed and eventually recommended Elda Buonanno, a candidate from the list who had previously taught at QCC as an adjunct lecturer in Italian. Bourbon Decl. ¶¶ 18, 20. Shortly thereafter, the DPBC hired Buonanno. Def.'s Rule 56.1 Stat't ¶ 23. Plaintiff was not interviewed or considered during this second attempt to fill the position. Id. at ¶ 22.

On November 2, 2005, plaintiff filed a complaint with the New York State Division of Human Rights ("NYSDHR") alleging race and national origin discrimination against QCC and CUNY based on their failure to hire her. Cardozo Decl. Ex. N ("NYSDHR complaint"). In her complaint, plaintiff identified herself as "Haitian and Black." Id. at ¶ 1. On December 8, 2005, defendants responded to this complaint and denied plaintiff's allegations. Cardozo Decl., Ex. O.

---

[1] The adjunct professor position is a part-time job. Def.'s Rule 56.1 Stat't ¶ 3.

The NYSDHR dismissed the complaint on March 8, 2006, after determining that "there is NO PROBABLE CAUSE to believe that the respondent has engaged in or is engaging in the unlawful discriminatory practice complained of." Cardozo Decl., Ex. P 1 (emphasis in original). Plaintiff filed the instant action on June 9, 2006.[2]

## DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted." White v. ABCO Eng'g Corp., 221 F.3d 293, 300 (2d Cir. 2000) (quoting Taggart v. Time, Inc., 924 F.2d 43, 46 (2d Cir. 1991)).

In a motion for summary judgment, a court "must first resolve all ambiguities and draw all inferences in favor of the non-moving party . . . ." Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000). However, in opposing a motion for summary judgment, the nonmoving party "may not rely simply on conclusory statements or on contentions that the affidavits supporting

---

[2] Neither plaintiff's NYSDHR filing, nor the instant complaint, mentions the second hiring as an incident of discrimination. Nevertheless, because plaintiff indicated in her complaint that she believed that the defendants were "still committing these acts against me," Cardozo Decl. Ex. A 3; because it is not clear from the filings before the court when Buonanno was hired; because defendants address the second hiring in the present motion and plaintiff responds to it in her affidavit in opposition thereto; and because "[w]hen the plaintiff proceeds *pro se* . . . a court is obliged to construe his pleadings liberally, particularly when they allege civil rights violations," McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004), the claim is interpreted to include both incidents.

3

the motion are not credible, or upon the mere allegations or denials of the adverse party's pleading." Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995) (quotation marks and citation omitted). Rather, the nonmoving party must "set forth specific facts showing that there is a genuine issue of fact for trial." Fed. R. Civ. P. 56(e).

In a Title VII case, "a plaintiff must provide more than conclusory allegations of discrimination to defeat a motion for summary judgment." Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997). While the Court judges a *pro se* plaintiff's pleadings by a more lenient standard, "proceeding *pro se* does not otherwise relieve [plaintiff] from the usual requirements of summary judgment." McMillan v. Examination Mgmt. Servs., No. 94 CV 2229, 1996 WL 551725, at *5 (S.D.N.Y. Sep. 27, 1996); see also Lee v. Coughlin, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (holding that a "*pro se* party's bald assertion, completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." (quotations omitted)).

## B. Applicable Law

Title VII of the Civil Rights Act of 1964 provides in relevant part that:

> [i]t shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C.§ 2000e-2(a). In order to establish an unlawful employment practice, a plaintiff must demonstrate "that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m).

4

The plaintiff's initial burden in a discrimination claim is to establish a *prima facie* case of discrimination. Plaintiff may establish a *prima facie* case of Title VII disparate treatment by showing: "1) that [s]he belonged to a protected class; 2) that [s]he was qualified for the position [s]he held; 3) that [s]he suffered an adverse employment action; and 4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." Feingold v. New York, 366 F.3d 138, 152 (2d Cir. 2004); see also Collins v. New York City Transit Auth., 305 F.3d 113, 118 (2d Cir. 2002) These four requirements, however, are "not necessarily applicable in every respect to differing factual situations." Id. at n.13. As the Supreme Court noted in International Brotherhood of Teamsters v. United States:

> The importance of McDonnell Douglas lies, not in its specification of the discrete elements of proof there required, but in its recognition of the general principle that any Title VII plaintiff must carry the initial burden of offering evidence adequate to create an inference that an employment decision was based on a discriminatory criterion illegal under the Act.

431 U.S. 324, 358 (1977); see also Norville v. Staten Island Univ. Hosp., 196 F.3d 89, 95 (2d Cir. 1999) (establishment of inference of discrimination is part of plaintiff's *prima facie* burden in Title VII case). The burden of establishing a *prima facie* case under Title VII "is not onerous, and has been frequently described as minimal." Scaria v. Rubin, 117 F.3d 652, 654 (2d Cir. 1997). "Establishment of the *prima facie* case in effect creates a presumption that the employer unlawfully discriminated against the employee." Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981).

Where the plaintiff establishes a *prima facie* case of discrimination, "[t]he burden then [shifts] to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection." McDonnell Douglas, 411 U.S. at 802. "If defendant carries this burden

5

of production, the presumption . . . is rebutted, and the factual inquiry proceeds to a new level of specificity." Id. at 255. The plaintiff must then "demonstrate that the proffered reason was not the true reason for the employment decision . . . . She may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Id. at 256.

## C. First Incident

Plaintiff's first claim relates to the department's decision not to hire her for the adjunct lecturer position. Plaintiff plainly belongs to a protected class. It is also clear that plaintiff was qualified for the adjunct professor position. Defendants acknowledge as much by stating that "[a]side from plaintiff, there were eight other individuals . . . who . . . appeared to be capable of teaching French." Def.'s Rule 56.1 Stat't ¶ 8. Plaintiff holds a Master's Degree in French and has taught French at the college level in the past. NYSDHR Complaint ¶ 2.

Nevertheless, plaintiff has failed to offer sufficient evidence to create an inference that defendants' decision not to hire her was motivated by a discriminatory motive. Aside from the fact that a white woman was hired instead of her, the only evidence of discrimination that plaintiff offers is a "facial expression" allegedly made by Bourbon at the end of her interview.[3] Plaintiff states that:

---

[3] The Court notes that in response to defendants' Rule 56.1 Statement, plaintiff states that "I did not testif[y] that the 'facial expression' that Dr. Bourbon made [when] I met her was the only reason that I believe that I was discriminated against," Pl.'s Aff. Opp'n Mot. Summ. J. ¶ 2. She nevertheless fails to point to any other reasons or evidence for her belief.

> I thought Professor Bourbon was going to give me that position. On the basis that the facial expression also that she made with her secretary when she told her. Well, the next day, that on Tuesday because the class was supposed to start on Tuesday the 27th, you know, of September and she made that facial expression with her pretending that I would bring certain documents the same morning and then to go back to York College to teach the class in the afternoon.

Chery Dep. 50-51. Plaintiff describes this "facial expression" as one of "mockery and insult," Pl.'s Aff. Opp'n Mot. Summ. J. ¶ 3, but without more, this interpretation fails to demonstrate discriminatory intent related to her race and/or national origin. See Nieves v. Avalonbay Communities, Inc., No. 3:06CV00198, 2007 WL 2422281, at *10 (D.Conn. Aug. 23, 2007) (holding that tone and facial expression of employer not sufficiently indicative of racial discrimination where no other evidence is presented).

Although plaintiff does not compare herself directly to any of the other applicants besides Ms. Rechtman, she requested statistical information regarding minority representation amongst the faculty at both QCC and CUNY. Pl.'s 1st Request Interrog. There are two possible interpretations of this request. First, while it is true that "[a] plaintiff may support an inference of race discrimination by demonstrating that similarly situated employees of a different race were treated more favorably. In order to make such a showing, the plaintiff must compare herself to employees who are *similarly situated in all material respects*." Norville, 196 F.3d at 95, (emphasis added) (quotation omitted). Plaintiff's requests were for "the percentage of black Teachers who teach French *full-time* at [QCC] from 2001 to 2006" and "the percentage of black Teachers who currently teach French on a *full-time basis* in the CUNY System from 2001 to 2006." Pl.'s 1st Request Interrog. (emphasis added). However, the position for which plaintiff applied was a part-time position. As a result, even if the Court were to read an implicit allegation of as applied discrimination into these interrogatories, such an allegation could not

stand as plaintiff has failed to compare herself to employees who are similarly situated in all material respects. See e.g., Spivey v. Derwinski, No. 89 Civ. 8582, 1995 WL 217505, at *22 (S.D.N.Y., April 11, 1995) (finding that part-time student interns were not similarly situated to full-time employees).

The second possible claim that can be gleaned from plaintiff's interrogatories is that she intended to allege a pattern of discriminatory hiring on the part of defendants.[4] In order to establish a *prima facie* case of disparate impact, a plaintiff must demonstrate that a facially neutral employment policy or practice has a significant disparate impact. See Griggs v. Duke Power Co., 401 U.S. 424, 430-32 (1971). Regardless of whether plaintiff has provided sufficient evidence to demonstrate disparate impact,[5] she has failed to allege a particular discriminatory policy or practice, besides their failure to hire her. "Allegations which contend only that there is a bottom line racial imbalance in the work force are insufficient." Brown v. Coach Stores Inc., 163 F.3d 706, 712 (2d Cir. 1998) (quoting Wards Cove Packing Co. v. Atonio, 490 U.S. 642, 653 (1989)). Plaintiff has failed to meet her *prima facie* burden of establishing an inference of discriminatory intent on the part of defendants. Therefore, the Court must grant summary judgment on plaintiff's first discrimination claim.

The Court notes that, even assuming that plaintiff had made out a *prima facie* case of discrimination, defendants have successfully rebuted that inference. The department maintains

---

[4] "When I look at the percentage of white that is hired as full-time teachers or adjunct at [QCC] and other colleges because the percentage of black is lower than the percentage of white and I do understand that blacks represent only 12 percent of the U.S. population, that is another story. But when you look at this, there is a discriminatory problem there." Chery Dep. 50-51.

[5] Defendants objected to these interrogatories but nevertheless indicated that the percentage of full-time French teachers at QCC between 2003 and 2006 who were black varied from 6.7 to 7.1%.

8

that it made the decision to hire Rechtman "[b]ased on Ms. Rechtman's multiple language skills and near completion of her Ph.D." Def.'s Rule 56.1 Stat't ¶ 20. Anne-Marie Bourbon, Chair of the department, explained that "[t]he Department desired a candidate who could teach more than one language because this would strengthen the adjunct pool by allowing adjuncts to quickly fill in and teach other classes when emergencies arose . . . ." Bourbon Decl. ¶ 13. According to her resume, Rechtman speaks French, Spanish, Hebrew, Italian and Arabic, and had experience teaching both French and Hebrew. Cardozo Decl. Exh. F.

Plaintiff alleges that these non-discriminatory reasons are pretextual because "[t]here was an emergency, the Department had no time to look for someone with multiple language skills . . . ." Pl.'s Aff. Opp'n Mot. Summ. J. ¶ 11. However, it is not contested that the department maintained a running list of applications for the adjunct position. As a result, defendants did not need additional time in order to distinguish amongst those candidates and determine which would best meet their current and future needs. Furthermore, if the department had in fact treated the situation as an "emergency," they could have hired Rechtman, who had already been interviewed (albeit for a full-time position), without interviewing plaintiff. The fact that plaintiff was interviewed and considered indicates that, despite the pressure to make a quick hire, defendants followed their normal hiring procedure.

Plaintiff also asserts that she speaks "four languages: French, English, Spanish and Creole," that she has the ability to "teach more than one language," and that she "was admitted at Stony Brook University for [a] Doctoral program." Id. at ¶¶ 12, 13. Nevertheless, plaintiff's resume on file with QCC does not mention admission by or enrollment at Stony Brook, and states only that she is fluent in French and English and has "[k]nowledge of Spanish." There is

9

no evidence on the record indicating that defendants had any information about plaintiff other than that which was on her resume.

In order to demonstrate pretext, "[a] plaintiff must produce not simply some evidence, but sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the defendant were false, and that more likely than not discrimination was the real reason for the employment action." Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000) (citations and alterations omitted). Plaintiff has failed to adduce sufficient evidence to generate any genuine issue of fact on this critical point. Therefore, even if plaintiff had met her *prima facie* burden, her claim would not survive defendant's motion for summary judgment.

### D.  Second Incident

Plaintiff's second claim arises out of defendants' decision not to hire her for the adjunct position after Rechtman's unexpected departure. In this instance, the fact that Buonanno had been part of the initial applicant pool but not been interviewed for the first job offering, together with the fact that plaintiff was considered in the first instance but not in the second, despite the fact that she was the only candidate that had been interviewed, may be sufficient to meet plaintiff's minimal initial burden of establishing a inference of discriminatory intent.

In order to explain this otherwise unusual turn of events, defendants assert that a new selection criterion emerged in light of Rechtman's unexpected departure. In addition to the ability to teach multiple languages, "as a result of the Department's problem in finding and keeping a French professor . . . the Department was searching for someone it knew could handle the discipline problems already occurring in the French class." Def.'s Rule 56.1 ¶ 21.

10

According to defendants, and in accordance with Buonanno's resume, Buonanno was also completing a Ph.D., and had over fifteen years of experience teaching multiple languages, five of which were within the CUNY system. Bourbon Decl. ¶ 18. More importantly for defendants' purposes, "[s]ince Ms. Buonanno had previously taught at QCC as an adjunct . . . she was familiar with the school and the student body, and had experience teaching QCC students including those who potentially could be disruptive." This reasoning is entirely rational.

As has been noted, plaintiff did not address the second hiring incident directly in either of her complaints. In her only other filing before this Court, plaintiff's only mention of Buonanno is the following: "Bourbon selected Ms. Elda Buonanno to replace Ms. Rechtman because she is white." Pl.'s Aff. Opp'n Mot. Summ. J. ¶ 10. While the Court interprets plaintiff's arguments about her Ph.D. studies and her ability to teach multiple language to apply to both claims, as noted above, those claims do not suffice to show pretext. As for defendants' additional non-discriminatory reason related to student discipline, plaintiff states only that "I believe that discipline problems decrease at the college level. College students are likely to control their own behaviors. Perhaps, the students had difficulties to understand the subject." Id. at ¶ 9. These assertions of personal opinion are insufficient to "support a rational finding that the legitimate, non-discriminatory reason[] proffered by the defendant [was] false, and that more likely than not discrimination was the real reason for the employment action." Weinstock, 224 F.3d at 42.

It is unfortunate that plaintiff, or anyone, believes that she is the victim of racial discrimination. While the Court appreciates the difficulty of proving such claims, there must be some evidence that the defendant's actions were motivated, at least in part, by discriminatory animus. The Court grants summary judgment for defendants on plaintiff's second claim.

## CONCLUSION

For the reasons elaborated above, the Court grants summary judgment for defendants on all of plaintiff's discrimination claims.

SO ORDERED.

Dated: Brooklyn, New York
March 25, 2008

s/ Judge Raymond J. Dearie

RAYMOND J. DEARIE
United States District Judge